(No. 24689.—

Bertha Schafer *et al.* Appellants, *vs.* Lorette Robillard *et al.* Appellees.

*Opinion filed Oct. 13, 1938—Rehearing petition stricken Dec. 8, 1938.*

T. R. JOHNSTON, and VICTOR N. CARDOSI, for appellants.

JOHN E. HOLLAND, (DONALD GRAY, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs below have appealed from a judgment of the circuit court of Kankakee county dismissing a complaint in an ejectment suit against defendants. The appeal was transferred to this court by the Appellate Court for the Second District. The property in controversy is a strip of land in the city of Kankakee, extending in a southerly direction from the south side of Cobb boulevard to low watermark of the Kankakee river. The complaint describes the strip as 10 feet wide.

Defendants' motion in this court to dismiss the appeal has been taken with the case. Plaintiffs suggest that by appearing, filing brief and argument, arguing the case orally and submitting the cause on the merits in the Appellate Court, defendants have waived any right to rely upon the grounds assigned, and that the motion, here, comes too late. The record does not show such proceedings in the Appellate Court, and the suggestion cannot be considered. Defendants contend that because the abstract shows that notice of appeal was filed as of July 12, 1937, while the service of a copy on defendants' counsel was on July 10, the service was insufficient. They claim the service must be had after the notice is filed. The requirement of rule 34 that a copy of the notice of appeal shall be served within five days after the notice is filed in the lower court, is a limitation upon the time for such service. The service here was had before the limitation expired. The rule does not require notice of the filing but only service of a copy of the notice. Counsel for defendants had the same notice he would have had if the notice had been filed before the service. To hold the service was insufficient would be to adopt a strained construction of the rule not warranted by its terms. Neither is the fact that the abstract does not show the dates of serving a copy of the *praecipe* for record and notice of its filing, a sufficient ground for dismissing the proceeding. It

shows the service and refers to the appropriate pages of the record. Rule 38 requires the abstract to be sufficient to present fully every error relied upon, and provides that it will be taken as accurate and sufficient for a full understanding of the questions presented for decision unless the opposite party shall file a further abstract. Defendants make no claim that the *praecipe* and the notice of its filing were not, in fact, served within the time prescribed by rule 36. No issue being raised on that question, the abstract will be taken as sufficient to show due service. The contention that the abstract does not show it contains all the evidence heard is equally without merit. It shows at the beginning of the report of the proceedings: "And thereupon the plaintiffs, to maintain the issues on their part, introduced the following evidence, to-wit:" This is followed by the evidence offered by plaintiffs, with a statement at the conclusion: "Here the plaintiffs rested." Immediately following this language there appears defendants' motion for judgment, the argument on the motion and its allowance. This is a sufficient showing without an express statement that it contains all the evidence heard. (*People* v. *Scowley*, 353 Ill. 330; *People* v. *Nelson*, 320 id. 273; *People* v. *Scanlan*, 265 id. 609.) The motion to dismiss the appeal is denied.

Plaintiffs, Charles Schafer and Bertha Schafer, are husband and wife. The defendants are likewise related. This litigation involves the location of the boundary line between the Schafer property and the Robillard property on the south side of Cobb boulevard, which runs east and west, and is about 400 feet north of the Kankakee river. Both properties are part of a tract formerly owned by Emory Cobb, who also owned most of the land in that vicinity. On January 3, 1900, Cobb executed a deed to plaintiff Charles Schafer, in which the land is described as "Commencing at a point Thirty (30) feet South of the centre line of Cobb Boulevard as now graded and on the East line of Osborne

Avenue extended southerly in a direct line from the South
line of the Stoddard Subdivision in the City of Kankakee,
Illinois, thence southerly on said East line of Osborne Ave-
nue extended to low water mark of the Kankakee River,
thence westerly along said low water mark to a point where
the East line of Lincoln Avenue in the said Subdivision
extended in a direct line would strike said low water mark,
thence northerly along said East line of said Lincoln Ave-
nue to the south line of said Cobb Boulevard extended,
thence East along South line of said Boulevard three hun-
dred seventy-five (375) and three-tenths (3/10) feet to
the place of beginning, containing three (3) fifty one hun-
dredths (50/100) acres more or less." The Stoddard sub-
division lies some distance north of Cobb boulevard. At
the time the deed was made Osborne avenue had not been
opened that far south, but was opened prior to the com-
mencement of this suit. It runs southerly bearing slightly
to the west, but does extend south beyond Cobb boulevard.
Concurrent with the Cobb deed, a contract was executed
reciting the purchase price as $300 per acre, providing for
a survey to determine the acreage to low watermark, and
an adjustment of payment according to the quantity of
land shown by the survey. The survey was made by a
surveyor employed by Cobb. He set stakes at each end of
what he fixed as the east line of the property. Schafer
immediately entered into possession and built a greenhouse
near the east line. He erected a wire fence on the line as
surveyed. It was in existence as late as 1933. In 1904
he built a dwelling-house on the west part of the tract, and
lived there with his wife until 1927, when they moved to
Kalamazoo, Michigan. The house has been occupied since
that time by their daughter and her family, except about
one year at the beginning of the period, when it was occu-
pied by another tenant.

In 1909, Schafer sold the east 225 feet of the tract
to his sister Emma Anderson, who built a house near the

west line of her property. In 1916 she conveyed it to the defendant Amos H. Robillard. He and his wife moved into the house and have occupied it ever since. In 1922, Robillard conveyed the west half of the 225-foot strip to his wife, Lorette Robillard, who now holds title. In each instance the deed follows the description of the starting point and of the east line of the 225-foot tract as set out in the deed from Cobb to Schafer. In 1924, Schafer and his wife, in order to secure an indebtedness to plaintiff Amelia M. Schafer, conveyed the remainder of the tract to her. The deed describes the whole tract conveyed by Cobb to Schafer in the same language as the Cobb deed, "except the east 225 feet thereof." Amelia M. Schafer conveyed it back to Bertha Schafer in 1929 by a like description, and Bertha Schafer is the owner of record.

In 1903, Cobb conveyed to Lizzie LaBounty the land east of the tract he previously deeded to Schafer, describing it as commencing at the northeast corner of the land conveyed to Schafer. LaBounty laid out a subdivision with the west line on the line of the Cobb survey, and planted a row of trees along the Schafer fence. The trees are still there.

In 1924, Cobb boulevard in front of the Schafer and Robillard properties was paved to a point about 10 feet west of the line fixed by the survey. The east end of the pavement indicated the east line of Osborne avenue. Schafer and Robillard had a conversation about agreeing to the location of the east line of the property but nothing was done about it. In 1926, Robillard planted some peonies and shrubbery on the strip in controversy. He moved his garage partly onto it after Schafer moved to Kalamazoo. Schafer testified he regarded it as a trifling matter between neighbors and said nothing about it.

In 1933, the county surveyor located the east line of Osborne avenue extending between Cobb boulevard and the river as 8.8 feet west of the line of the Cobb survey

at the north end and 16.6 feet west at the south end. The fences on the line of the Cobb survey were still there. Meanwhile, in the year 1926, Robillard procured a decree of the circuit court quieting title to a tract 52½ feet wide along and adjacent to the west line of the LaBounty subdivision. The complaint and the decree describe the east line of the 225-foot tract as commencing at the northwest corner of LaBounty's subdivision and running thence southerly along the west line thereof to low watermark of the river. The complaint alleges, and the decree finds, that by the deed of January 3, 1900, Cobb conveyed the property to Schafer, who took immediate possession and enclosed it with a fence; that Robillard acquired title by *mesne* conveyances, and that he and his grantors have been in adverse possession ever since the Cobb deed. Neither of the plaintiffs in this suit was a party to that proceeding. The only defendants were parties by the name of Cobb.

Defendants urge that the complaint is insufficient in law for want of the necessary averments to maintain an action in ejectment. Defendants made a similar motion in the circuit court, which was denied. The motion contained most of the grounds now relied upon. The grounds not asserted in the court below cannot be raised here for the first time. A case cannot be tried piecemeal. No complaint is made as to the action of the trial court in denying the motion to strike. Defendants are not in a position to claim the complaint is insufficient.

Plaintiffs contend the east line of the tract purchased from Cobb in 1900 was established by the survey and subsequent possession in accordance therewith; that Robillard recognized that line by his suit to quiet title and defendants are estopped to question it; that defendants' rights are limited by the conveyance from Schafer to Emma Anderson; that the line between the properties of Schafer and Emma Anderson was established 225 feet west of the La-Bounty subdivision and acquiesced in by Emma Anderson

and by the defendants until 1924; and that plaintiffs have title to the strip in controversy by adverse possession for more than twenty years. There can be no question but what Schafer had possession of the strip from 1900 until 1909, when he sold the east 225 feet of the tract to Emma Anderson, because he owned and occupied both tracts during that period. Under the claim of adverse possession, Schafer testified he paid the taxes on the land be bought from Cobb except the east 225 feet from 1900 to 1924, and that his wife paid them since the property was deeded back to her; and that he had paid the taxes on and had possession of the strip in dispute for over twenty years. He testified he planted a few cherry trees and currant bushes on the strip. His daughter's testimony shows they were planted about 1922. Upon what part of the strip they were planted or how much of it they occupied is not shown. There is no evidence of any other physical act by Schafer or his wife tending to show possession or that Emma Anderson did not have possession of some part of the strip by some physical act. Schafer's daughter testified that as a child, she and the children of her aunt, Emma Anderson, who then owned the Robillard property, regarded a line two or three feet east of a thorn-apple tree on the strip in dispute as the line between the properties. This, of course, was not binding on anybody. She also testified the line was fixed by a survey, but she did not know when. Schafer did not testify there was any such survey. If there was, it is not shown that Emma Anderson or her grantees knew anything about it or agreed to or acquiesced in it. There is no testimony to show the location of the line between the properties was ever in dispute or acquiesced in before 1924 or that it was ever discussed or mentioned. Nor is there any showing that Schafer ever pointed out or indicated any certain location as the line between the properties, either to Emma Anderson or the Robillards. The evidence is not sufficient to show Schafer had exclusive

possession of the strip in controversy after his deed to Emma Anderson, and it is insufficient to establish the claim of adverse possession for twenty years.

As to the claim of estoppel by Robillard's suit to quiet title to the strip east of the east line of Osborne avenue, it is only parties and their privies, in blood or estate, that are estopped by a decree or judgment. Parties to a decree, in the eye of the law, are those, only, who are named as such in the record, and are properly served with process or enter their appearance. A privy in blood or estate is one who derives title to the property in question by descent or purchase. A privy to a judgment or decree is one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto. (*Orthwein* v. *Thomas,* 127 Ill. 554; Freeman on Judgments, 3d ed. sec. 162; 34 Corpus Juris, "Judgments," 974.) Lorette Robillard's title was acquired more than three years prior to her grantor's suit to quiet title. Under the rule she was not in privity to that proceeding and is not estopped by it. Plaintiffs were not parties to the suit. They did not acquire title after it was instituted or through Robillard, and were not in privity. To create an estoppel by verdict it is indispensable that the former adjudication be between the same parties or their privies. (*City of Chicago* v. *Partridge,* 248 Ill. 442.) The rule that estoppels must be mutual is familiar. (*Chicago and Alton Railroad Co.* v. *Keegan,* 152 Ill. 413; *Provident Mutual Life Ins. Co.* v. *Norcott,* 366 id. 82.) The decree in Robillard's suit to quiet title does not operate as an estoppel in this proceeding.

Whatever may have been the effect of the Cobb survey as to the location of the east line of the tract purchased from him by Schafer, the record does not show that when Schafer sold the 225-foot tract it was measured or agreed to be measured from the line established by that survey, or that any particular line between the properties was ever

agreed to or acquiesced in. Nor is it shown that either of the Schafers acquired title to the strip in controversy by adverse possession, or what part of it they occupied. In ejectment the legal title, only, is involved. Courts have no jurisdiction to adjust equities or to grant equitable relief. If the plaintiff is to recover, it must be upon the strength of his own title and not upon the weakness of the defendant's title. (*Hooper* v. *Goldstein,* 336 Ill. 125; *Zwick* v. *Catavenis,* 331 id. 240.) Before a plaintiff can recover in an action of ejectment he must show he has a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover possession thereof, or some share, interest or portion thereof. (Ill. Rev. Stat. 1937, chap. 45, sec. 4, p. 1395.) Plaintiffs have failed to meet those requirements.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*